IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELIZABETH LUNA | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-17-1759 |
| v. | § | |
| | § | |
| MACY'S SOUTH, INC. and | § | |
| MACY'S RETAIL HOLDINGS INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION DENYING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Elizabeth Luna sued Macy's Retail Holdings, Inc., seeking damages for injuries she allegedly sustained while working at a Macy's store in Houston, Texas. Macy's moved for partial summary judgment on Luna's claim for punitive damages, which the court granted with Luna's agreement. (Docket Entry No. 27, 33). Luna moved for partial summary judgment on the issue of Macy's negligence. (Docket Entry No. 30). Based on a careful review of this motion, the response, the record, and the applicable law, Luna's motion for summary judgment on this issue is denied. The reasons are analyzed below.

**I.      Background**

Elizabeth Luna worked at Macy's in Houston as a Visual Merchandiser from October 2013 until November 2016. Luna's duties included assembling and dressing mannequins, painting walls, hanging signs from the ceiling, decorating the store for the different seasons, assembling sign fixtures and platforms, and working on tasks for "department maintenance." (Docket Entry No. 30-2 at 18).

On January 21, 2016, Luna arrived at work earlier than usual, at 5:00 a.m. Macy's had received new fixtures and needed employees to move the old fixtures from the home department

1

to another department on a different floor, and then assemble the new fixtures and move them into the home department. Luna worked on assembling new fixtures and moving them to the home department. (Docket Entry No. 30-1 at 14). The summary judgment record includes photographs of the type of fixtures at issue. (Docket Entry Nos. 27-1, Ex .C, 30-6). The photographs show the new fixtures are similar to shelves:



(Docket Entry No. 30-6). Luna testified that the new fixtures she assembled and moved were empty, unlike those shown in the photographs. (Docket Entry No. 30-1 at 15).

The record contains conflicting testimony of what occurred that day. Luna testified that she worked on assembling the new fixtures with Macy's employees Zoe White, the District Visual Director, Penney Fontenot, the store's Visual Manager, and Frank Cortez, another Visual Merchandiser. (*Id.* at 18-20). Fontenot testified that White supervised the process of removing the old fixtures, assembling the new fixtures, and moving them into the home department, which involved approximately 20 people. (Docket Entry No. 30-2 at 64). Fontenot testified that Cortez was on vacation that day and that a female associate helped Fontenot and Luna move the fixtures. (*Id.*).

Luna had previously moved fixtures using tools the parties refer to as "dollies" and "sliders" without problems. (Docket Entry No. 30-1 at 20, 24, 28). Luna would lift a fixture using the dolly as a lever and another team member would place the sliders underneath the fixture, to apparently roll the fixtures from one place to another. (*Id.* at 22).

Luna testified that she did not help remove the old fixtures from the home department that day. Luna testified that after other employees had finished moving the old fixtures, Fontenot and Cortez went to the men's department to do other work and Luna stayed with White in the home department. (*Id.*). White, who had a preexisting back injury, directed Luna, who testified that she moved the new fixtures by herself. (*Id.* at 26). Luna testified that she did not use dollies and sliders to move the new fixtures because she was moving them alone and had no way to lift them up to place the sliders underneath. (*Id.* at 25). She had previously moved fixtures alone, but she had not moved any as heavy as these new fixtures. (*Id.* at 27).

Fontenot, on the other hand, testified that she and Luna moved these new fixtures together and that Luna did not move any fixtures alone. (Docket Entry No. 30-2 at 64–65). Fontenot testified that it took three people to move one fixture. According to Fontenot, Luna

3

would put the dolly under the fixture lip and push down on the dolly to use it as a lever, and the dolly would lift the fixture. (*Id.* at 67). Once lifted, Fontenot and the other associate would move sliders underneath, and Luna would lower the fixture onto the sliders. (*Id.*).

Luna testified that nothing seemed wrong with the new fixtures. (Docket Entry No. 30-1 at 57). She did not ask for a dolly or for people to help her, and she did not refuse to move the new fixtures. Luna testified that no one made her move the fixtures alone. (Docket Entry No. 30-1 at 16). The move took her one or two hours, during which Luna alleges she began experiencing back pain. (*Id.* at 28). Luna did not immediately tell White or Fontenot that she was in pain. (*Id.* at 32). Luna testified that later that day, she texted Fontenot to report that her back hurt. (*Id.*). Fontenot testified that Luna never texted her, but told her in person that her back hurt. (Docket Entry No. 30-2 at 63). Fontenot told Luna to take a 15-minute break, and Luna did not move any fixtures after the break. (*Id.* at 34). Luna reported a back injury to Macy's within 48 hours. (*Id.* at 38).

Macy's does not subscribe to Texas Worker's Compensation under Texas Labor Code § 406.033. Luna sued for negligence, and Macy's timely removed. (Docket Entry Nos. 1, 9).

Luna moves for partial summary judgment on the issue of Macy's negligence. (Docket Entry No. 30). The parties agree that Texas law applies.

The summary judgment record includes the following:

- Luna's deposition, (Docket Entry No. 30-1);
- The deposition of Penney Fontenot, a Macy's representative, (Docket Entry No. 30-2);
- Photographs of the fixtures, (Docket Entry No. 30-6);
- The Macy's Incident Report dated January 24, 2016, (Docket Entry No. 30-3);
- Luna's medical records from the Houston Methodist Willowbrook Hospital, dated January 24, 2016, (Docket Entry No. 30-4);

- Macy's job description for the "Visual Associate" position, (Docket Entry No. 30-5);

- Luna's Macy's job application dated October 17, 2013, (Docket Entry No. 30-7);

- Macy's responses to Luna's requests for admission, (Docket Entry No. 30-8); and

- An affidavit from Kiernan McAlpine, Luna's attorney, (Docket Entry No. 30-9).

Macy's objects to Luna's exhibits 3, 4, 5, 6, and 7 as hearsay and as not properly authenticated. Macy's has made general objections without explaining them. Macy's does not object that the exhibits are not capable of being presented in admissible form. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting FED. R. CIV. P. 56(c)(2)).

The objections are overruled. Exhibits 3, 4, 5, and 7 appear to fall under the hearsay exception for records of regularly conducted activity. FED. R. EVID. 803(6); *see also Musket Corp. v. Suncor Energy U.S.A. Mktg.*, No. H-15-100, 2016 U.S. Dist. LEXIS 157664, at *10 (S.D. Tex. Nov. 15, 2016) (considering the plaintiff's general hearsay objection and finding that "the objected-to emails and records should be presented in a form that is admissible at trial because they will fall either into the business records hearsay exception or will be considered admissions of a party opponent and thus not hearsay.").

Authentication objections are not a basis for excluding these exhibits. "For purposes of authentication, Federal Rule of Evidence 901(a) requires 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Mims v. Oliver*, No. H-15-644, 2017 U.S. Dist. LEXIS 110884, at *10 (S.D. Tex. July 18, 2017). "Circumstantial evidence, such as the document itself and the circumstances surrounding its discovery, is sufficient for authentication."

*Id.* (citing *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008)). "The Fifth Circuit 'does not require conclusive proof of authenticity before allowing the admission of disputed evidence . . . It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.'" *Id.* (citing *McLain*, 516 F.3d at 308). Luna submits an affidavit from her attorney stating that Exhibits 3, 5, 6, 7, and 8 were received from Macy's during discovery, and that the letterhead on the cover page of the production and the certificate of service authenticate the documents. (Docket Entry No. 30-9 at 3). The contents and circumstances are sufficient to support a finding of authenticity. "Fifth Circuit courts have found that a document produced in discovery was properly authenticated where, in addition, the document (1) bore the producing party's signature, (2) the party did not claim that the document was not authentic or that her signature was a forgery, and (3) the party affirmed the truth of the facts contained in the produced record in an opposition to summary judgment." *Elwakin v. Target Media Partners Operating Co. LLC*, 901 F. Supp. 2d 730, 742 (E.D. La. 2012) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998)). Macy's does not assert that the documents are not authentic or are forgeries and affirms the facts contained in the documents in its own summary judgment motion. Exhibit 4, Luna's medical records, contain an affidavit from the records custodian authenticating the medical records.

The objections to these exhibits are overruled.

## II. The Legal Standard for Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 Fed. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Par. Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific

evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### III. Analysis

Luna moves for partial summary judgment as to Macy's negligence, leaving damages for the jury trial. (Docket Entry No. 30). Luna argues that there is no factual dispute material to determining the elements of her negligence claim and that she is entitled to judgment as a matter of law.

Macy's responds that the facts Luna presents as "undisputed" are disputed. (Docket Entry No. 31). Macy's argues that Luna's deposition testimony conflicts with Fontenot's deposition testimony and with Luna's own presentation of the facts in her summary judgment motion.

Under Texas law, a nonsubscriber's employee "must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment." *Kroger Co. v. Keng*, 23 S.W.3d 347, 251 (Tex. 2000) (quoting TEX. LAB. CODE § 406.033). "In order to establish negligence, evidence must be produced to establish a duty, a breach of that duty, and damages proximately caused by the breach." *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995).

8

"The existence of a legal duty is a question of law for the court although in some instances it may require the resolution of disputed facts or inferences which are inappropriate for legal resolution." *Ft. Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392 (Tex. 1991). Luna argues that Macy's breached a duty to her by "instructing Luna to perform work that was outside Luna's job description that she was not experienced in, fit, or trained to do, and by negligently supervising her in the work leading to her injuries." (Docket Entry No. 30 at 3).

The parties agree that as Luna's employer, Macy's owed her a duty to provide a safe workplace. *See, e.g.*, *Werner*, 909 S.W.2d at 869 ("Although an employer is not an insurer of his employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place."); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam) ("An employer has a duty to use ordinary care in providing a safe workplace. . . . It must, for example, warn an employee of the hazards of employment and provide needed safety equipment or assistance."); *see also* Docket Entry No. 31 at 5 ("Macy's readily admits that every employer owes a 'nondelegable and continuous duty to provide a safe place to work.'" (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 116 (Tex. 1996)). "This duty includes an obligation to provide adequate help under the circumstances for the performance of required work." *Werner*, 909 S.W.2d at 869. Employers also have a duty to supervise their employees' activities. *See, e.g.*, *Kroger Co. v. Milanes*, 474 S.W.3d 321, 335 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975) *abrogated on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978)).

Macy's argues that this general duty is not the end of the inquiry because Texas law requires a more specific duty, which Luna has failed to prove Macy's owed or breached. *See, See, e.g.*, *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 201 (Tex. 2015). Macy's argues that, for

example, an employer owes no duty to protect employees from open and obvious dangers. *See, e.g.*, *Austin*, 465 S.W.3d at 201 ("[U]nder Texas law, . . . an employer generally does not have a duty to warn or protect its employees from unreasonably dangerous premises conditions that are open and obvious or known to the employee."). An employer also "owes no duty to warn of hazards that are commonly known or already appreciated by the employee," *Elwood*, 197 S.W.3d at 794, and "no duty to provide equipment or assistance that is unnecessary to the job's safe performance." *Id.* at 795. "And, when an employee's injury results from performing the same character of work that employees in that position have always done, an employer is not liable if there is no evidence that the work is unusually precarious." *Id.* In addition, "an employer's duty to instruct applies to an inexperienced employee but not to one who is experienced in the work . . . assigned." *Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Luna alleges a breach of Macy's duty to instruct her on how to perform the work. Macy's argues that there are factual disputes material to determining whether Luna was experienced in lifting fixtures, whether she was fit to lift the fixtures, and whether she was trained to properly lift the fixtures. Luna testified that she was not experienced in moving the new fixtures. (Docket Entry No. 30-1 at 23). Macy's points to record evidence showing that Luna had previously moved fixtures like the "old fixtures" during her employment. (Docket Entry No. 30-1 at 23). The record does not contain enough evidence about the differences between the new and old fixtures to determine whether experience with moving old fixtures provided experience moving new fixtures. Macy's specifically disputes Luna's claim that she had no experience in moving "furniture," or other heavy objects, noting that Luna's only support is Fontenot's testimony that she did not know Luna's work experience. (Docket Entry No. 31 at

6; Docket Entry No. 30 at 5 n.3 (citing Docket Entry No. 30-2 at 39)). Macy's also points to Luna's testimony that she had previously moved fixtures in the same way, using a dolly, and that she had been trained in how to lift heavy objects safely. (Docket Entry No. 30-1 at 22, 47).

The confusion is increased because, as Macy's points out, Luna gave deposition testimony that she was injured while moving new fixtures. (Docket Entry No. 30-1 at 13–14, 18). Macy's argues that this conflicts with Luna's summary judgment argument that she was injured while moving the old fixtures, but that she "exacerbated" her injury by moving the new fixtures. (Docket Entry No. 30 at 5–6).

Macy's also argues that Luna cannot show that she was unfit for the job, because she volunteered for it and was not instructed to do it. Macy's cites Fontenot's deposition testimony that Luna had offered to use the dolly to lift the fixtures. (Docket Entry No. 30-2 at 84). Macy's argues that Fontenot's testimony that Luna volunteered to lift the fixtures conflicts with Luna's testimony that a Macy's employee instructed her to do so. (Docket Entry No. 30-2 at 84; Docket Entry No. 30-1 at 26).

The record evidence contains other conflicts as well. Luna testified that White instructed her to move the fixtures by herself. (Docket Entry No. 30-1 at 26). Fontenot testified that she moved the fixtures with Luna. (Docket Entry No. 30-2 at 69). Luna's argument that undisputed facts show that she moved the fixtures by herself while supervised by Fontenot also conflicts with Luna's testimony that Fontenot and Cortez went to a different department, leaving Luna and White. (Docket Entry No. 30-1 at 21, 27).

Luna argues that the written job description for a visual associate states that lifting objects over 25 pounds or carrying objects over 15 pounds is not required, (Docket Entry No. 30-5 at 4), but that, as Fontenot testified, associates would lift heavier items. (Docket Entry No. 30-

11

2 at 59).  Luna argues that any reasonable juror would conclude that a 200-pound fixture exceeded the weight limit stated in the job description and that no reasonable employer would require an employee to perform acts outside that employee's job description.  Macy's responds that Luna's argument mischaracterizes the facts because Luna's argument assumes that she was "deadlifting the fixtures." (Docket Entry No. 31 at 11).  In fact, Macy's argues, Luna was lifting fixtures using a dolly, which reduced the weight.  It is more accurate to characterize what Luna did as pushing down on the dolly rather than as lifting the fixtures, according to Macy's.  Macy's argues that lifting objects heavier than those listed in a job description is not enough to prove negligence as a matter of law.  *See, e.g.*, *FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) ("a company's internal policies 'alone do not determine the governing standard of care.'" (quoting *Fenley v. Hospice in the Pines*, 4 S.W.3d 476, 481 (Tex. App.—Beaumont 1999, pet denied)).  Luna's job description is probative, but not determinative.

As this description of the arguments and record shows, there are too many factual disputes material to determining whether Luna was experienced in the duties she was performing when she alleges she was injured, whether a Macy's employee instructed Luna to perform those duties, and whether she was properly trained and was properly supervised to do so.  These disputes preclude summary judgment on whether Macy's breached a duty it owed to Luna, without reaching causation or damages.  Luna's motion for partial summary judgment as to Macy's negligence, (Docket Entry No. 30), is denied.  Docket call is reset to **August 24, 2018 at 2:30 p.m.** based on the court's schedule.

SIGNED on July 27, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge